FILED 8/21/2019 12:15 PM
David Trantham
Denton County District Clerk
By: Shelley Mccutcheon, Deputy

19-7681-431

CAUSE NO. _____

| | | |
|---|---|---|
| KATHRYN CAPUA, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | _____ JUDICIAL DISTRICT |
| THE UNIVERSITY OF HARTFORD | § | |
| and VINH NGUYEN, | § | |
| | § | |
| Defendants. | § | DENTON COUNTY, TEXAS |

## PLAINTIFF KATHRYN CAPUA'S ORIGINAL PETITION

NOW COMES Plaintiff Kathryn Capua (hereinafter "Kathryn") and files her Original Petition (hereinafter the "Petition"), complaining of Defendant The University of Hartford (hereinafter "Defendant Hartford"), and Vinh Nguyen ("hereinafter Defendant Nguyen") (sometimes Defendant Hartford and Defendant Nguyen are collectively referred to in this case as "Defendants"), and, in support thereof, would respectfully show the Court as follows:

### I.
### DISCOVERY LEVEL

1.01   Discovery in this case is to be conducted under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### II.
### NOTICES PURSUANT TO RULES 47 AND 169 OF THE
### TEXAS RULES OF CIVIL PROCEDURE

2.01   Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Kathryn states that the damages sought are within the jurisdictional limits of this Court, that Kathryn seeks monetary relief over One Million Dollars ($1,000,000) as described herein, and demands judgment for all the other relief to which she is entitled.



App. 002

2.02    This lawsuit is not subject to the expedited actions process of Rule 169 of the Texas Rules of Civil Procedure because Kathryn seeks monetary relief greater than One Hundred Thousand Dollars ($100,000).

## III.
## CONDITIONS PRECEDENT

3.01    All conditions precedent have been performed or have occurred.

## IV.
## JURISDICTION

4.01    This Court has subject matter jurisdiction over this lawsuit because the amount in controversy exceeds the minimum jurisdictional requirements.

4.02    This Court has personal jurisdiction over Defendants because each of the aforementioned Defendants: (1) engaged in, and transacted business within the State of Texas; (2) maintained continuous and systematic contacts with the State of Texas; (3) purposefully availed themselves to the laws of the State of Texas; (4) recruited individuals in Texas for their athletic programs; (5) committed torts and breaches of contract in the State of Texas against a Texas resident; and (6) a substantial part of the events giving rise to Kathryn's claims occurred in Texas.

## V.
## VENUE

5.01    Venue of this action is proper in Denton County, Texas, pursuant to Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code Ann. because (1) all or a substantial part of the events giving rise to Kathryn's claims herein occurred in Denton County, Texas, and if Section 15.002(a)(1) does not apply, then Section 15.002(a)(4) is applicable because Kathryn was a resident of Denton County when her causes of action accrued.



5.02    Since venue is proper in Denton County, Texas, as to at least one Defendant, venue is proper in Denton County, Texas, as to all Defendants pursuant to Section 15.005 of the Texas Civil Practice & Remedies Code Ann.

## VI.
## PARTIES

6.01    Kathryn's principal place of residence is in Denton County, Texas.

6.02    Defendant The University of Hartford, which is a specially chartered corporation created by the Connecticut Legislature in 1957, where service of process may be had on its President, Gregory S. Woodward, at 200 Bloomfield Avenue, West Hartford, Connecticut 06117.

6.03    Defendant Vinh Nguyen is an individual where service of process may be had by serving him at The University of Hartford, Department of Athletics, Sports Center, 200 Bloomfield Avenue, West Hartford, Connecticut 06117.

## VII.
## BACKGROUND FACTS

### *A Young Girl's Dream to Play Volleyball in College*

7.01    For many years Kathryn dreamed about playing volleyball at a collegiate level. Her dream became a reality when she was offered a full scholarship to play volleyball at Defendant Hartford, a Division I university, for the 2018-2019 academic year. However, when Kathryn arrived in Hartford in August 2018, it was nothing liked she imagined because she immediately began to face bullying, intimidation, and sexual harassment from Defendants Hartford and Nguyen.

7.02    Kathryn began playing volleyball in the seventh grade. She liked it so much that she joined a club team as a right-side hitter. Kathryn received private lessons from the owner



and club director, and consistently played-up a year with girls who were older than her. She absolutely loved playing this sport.

7.03    In high school, Kathryn played for the JV-1 volleyball team as a freshman, which meant playing volleyball with sophomores and juniors, and eventually played for the varsity team. Kathryn also played for various volleyball clubs as a right-sider hitter on Instinct's Volleyball Club's first team during her freshman and sophomore years in high school. She continued taking private lessons—now from an Olympic gold medalist—and received training from a coach for various men's professional international volleyball teams.

7.04    During Kathryn's junior year at Flower Mound High School, after she made the varsity volleyball team, she made the Northpoint Volleyball Club ("Northpoint") team. That is where Kathryn first met Defendant Nguyen, who was the head coach of the Northpoint team. Kathryn believed that it was a great opportunity to play at Northpoint because the team practiced in the same gymnasium as the players on the University of North Texas ("UNT") volleyball team, where Defendant Nguyen was also the associate head coach of the women's volleyball team.

7.05    Up to this point in Kathryn's volleyball journey, the positive experiences outweighed the negative. Kathryn had received volleyball training and coaching from multiple males and females. Coaches had pushed Kathryn to perform at a higher level because they knew she wanted to play collegiate volleyball. Even though Kathryn had worked with tough coaches, she always persevered and strived to make herself a better person, player, and teammate.

7.06    During Kathryn's junior year in high school, she would often travel to Northpoint to receive private lessons from Defendant Nguyen. Even though Kathryn enjoyed playing volleyball very much, she began experiencing a tremendous amount of unhappiness at



Northpoint's volleyball practices and tournaments because Defendant Nguyen exhibited a tremendous amount of negative attention toward her. Defendant Nguyen would criticize Kathryn in front of her teammates.

7.07    While Kathryn believed that Defendant Nguyen was providing her with excellent training, her spirit was diminishing due to Defendant Nguyen's continuous negative criticism toward her most of the time. The impact on Kathryn eventually caused Kathryn's mother to email Defendant Nguyen.

7.08    When Defendant Nguyen responded to Ms. Capua's e-mail, he also called Kathryn to apologize to her, referring to Kathryn as a "very special player." He acknowledged that he needed to "be more patient and positive with her." Defendant Nguyen further stated that, "I hope that the damage that I have done is not permanent and once again I apologize to you, Craig and Kathryn for my inappropriate behavior. I hope that you and your wonderful family can see past my short comings and give me another chance to do better."

7.09    At the time, Kathryn and her family accepted Defendant Nguyen's apology and gave him another opportunity to act in an appropriate manner. Thus, Kathryn continued to receive private lessons from Defendant Nguyen during her senior year after school was dismissed in the afternoon.

7.10    Not only did Kathryn want to play volleyball at the collegiate level, but she also wanted to experience it in California. Defendant Nguyen, a graduate of California Polytechnic Pomona ("Cal Poly") and a former Cal Poly Assistant Volleyball Coach, introduced Kathryn to the Head Coach of Cal Poly, which resulted in Kathryn attending Cal Poly on a partial scholarship to play volleyball during the 2017-2018 school year.

PLAINTIFF KATHRYN CAPUA'S ORIGINAL PETITION – Page 5 of 21



7.11    Unfortunately, after playing for only a few weeks, Kathryn suffered an injury during a game, which caused her to miss the remaining games in the 2017 season. The tuition at Cal Poly was expensive for an out-of-state resident even with the partial scholarship so Kathryn began pursuing other opportunities. Eventually, Kathryn accepted an offer to play volleyball at UNT by a coach who was close friends with Defendant Nguyen.

### *The Turn of Events for Kathryn to Play Volleyball at a Division 1 University with a Full-Ride Scholarship*

7.12    Around February, 2018, Defendant Nguyen left UNT and was named the head coach at Defendant Hartford. Shortly thereafter, Defendant Nguyen sent a text message to Kathryn's father stating, "I heard Kathryn is leaving Pomona and heading to UNT. I need a RS @ Hartford. Give me call."

7.13    Mr. Capua called Defendant Nguyen pursuant to his request. Defendant Nguyen informed Mr. Capua that it was a violation of the NCAA rules for him to contact Mr. Capua; nonetheless, he wanted to discuss the possibility of Kathryn playing for him the remainder of her college career. Kathryn received a medical "red shirt" her freshman year from Cal Poly due to her right ankle injury. This designation meant that she still had four years of eligibility to play volleyball, and could receive a Master's Degree from Defendant Hartford if she elected to stay. In essence, Kathryn would have received a four-year full-ride scholarship if she played volleyball at Defendant Hartford. The monetary value of this athletic scholarship was approximately $60,000 per year (total being $240,000 over four years).

7.14    Defendant Nguyen made it abundantly clear to Kathryn and Mr. Capua that he wanted Kathryn on his team because of her moral compass and that she was a very good volleyball player. Kathryn later learned that these statements were false and made simply to lure



Kathryn to Defendant Hartford so Defendant Nguyen could harass and groom her for future sexual misconduct by him.

7.15    Defendant Nguyen had subsequent telephone conversations with Kathryn and her parents, and Kathryn eventually accepted Defendant Nguyen's offer to play volleyball for Defendant Hartford beginning in the 2018 season and thereafter.

7.16    Kathryn wanted to be physically and mentally ready to play volleyball at the Division I level when she reported to Defendant Hartford in August 2018. Defendant Nguyen requested that Kathryn receive volleyball training from a specific coach in preparation and communicated directly with that coach regarding the exact training that he wanted Kathryn to receive over the summer. Defendant Nguyen further told Mr. Capua that he would stay in regular communication with the coach regarding Kathryn's training and progress over the summer, which ended-up being a false statement.

7.17    For the next two months, Kathryn received volleyball training from this coach for approximately five days per week.

7.18    Kathryn also retained a sports conditioning coach during the summer 2018, at a cost of thousands of dollars. This coach worked with Kathryn on her weight training, cardio workouts, and further developing her core muscles. Kathryn completed approximately six days each week of various types of sports conditioning during the summer 2018 in order to be in the best physical shape when she reported to Defendant Hartford in August 2018.

### *Defendant Nguyen's Betrayal of Trust and Sexual Harassment Was Set in Motion*

7.19    Kathryn and her parents arrived in Hartford, Connecticut on August 5, 2018. Since Kathryn had not previously visited Defendant Hartford, Defendant Nguyen wanted to pick Kathryn and her parents up from their hotel and provide a tour of the area.

7.20    During the tour, Defendant Nguyen told Kathryn's father that 13 players are on the volleyball roster and six of the players were sophomores like Kathryn. Defendant Nguyen stated, "I should not tell you this, but I hope that some of the sophomores quit." He finished his comment by sharing that coaches prefer that athletic scholarships be staggered among the academic years of the athletes.

7.21    Kathryn was Defendant Nguyen's first volleyball recruit after he became head coach at Defendant Hartford. Defendant Nguyen stated on more than one occasion to the Capuas that when Kathryn becomes a rising star at Defendant Hartford, the director of athletics would look kindly upon him because she was his first recruit. Defendant Nguyen wanted to tout his ability to lure female athletes to Defendant Hartford.

7.22    Things quickly changed. At dinner on the first evening, Defendant Nguyen demanded that Kathryn and her parents refer to him only as "Coach" or "Coach Nguyen." Even though Kathryn had made the Dean's Honor List at Cal Poly, Defendant Nguyen told Kathryn that her academic performance must improve and stated that her acceptance to the University of Hartford's Honors Program "must have been a form letter."

7.23    Defendant Nguyen began asserting pressure tactics on Kathryn by stating that his relationships with the coaches at Cal Poly and UNT would suffer because he recruited Kathryn to play for him. Defendant Nguyen made it perfectly clear to Kathryn of his expectations when he said, "you better not let me down!" Of course, Kathryn and the Capuas did not expect to be betrayed by Defendant Nguyen and Defendant Hartford either. Particularly, when they received assuring messages from Defendant Nguyen such as, "[T]hank you for trusting me with your daughters future. I will do my best to not let anyone down." The Capuas would not have left Kathryn at Defendant Hartford with Defendant Nguyen in charge had they known the sexual



harassment, demeaning behavior, and retaliation that Defendant Nguyen would launch on Kathryn at the first practice and throughout the remainder of the volleyball season.

### *The Wheels Fall-Off the Relationship Between Kathryn and Defendant Nguyen on the First Day of Practice Which is August 8, 2018*

7.24   Most of the women on the volleyball team did not even know that Defendant Nguyen recruited Kathryn to play until she arrived at a team dinner on or about August 7, 2018. But, from the beginning, Defendant Nguyen treated Kathryn differently. He called her out in front of the entire team—even stopping practice to berate her—while not doing the same to other teammates for the same perceived errors. Even though Kathryn sprained her left ankle during practice, she pushed herself to play through injuries, determined not to let Defendant Nguyen down.

7.25   Defendant Nguyen belittled Kathryn in front of her teammates as much as possible concerning her volleyball skills, constantly criticizing Kathryn. The entire team observed Defendant Nguyen single-out Kathryn to unleash his anger and hostility, while completely ignoring her off the court. Unfortunately, Kathryn had no one to turn to in Connecticut because she did not know anyone other than Defendant Nguyen when she arrived to play volleyball at Defendant Hartford.

7.26   Things got so bad that Kathryn's teammates asked her if she wanted to quit playing volleyball at Defendant Hartford because Defendant Nguyen did not like her. Kathryn's teammates expressed their concern that Defendant Nguyen was very mean to her and treated her like he did not want Kathryn on the team. Kathryn often cried about the demeaning conduct that Defendant Nguyen regularly exhibited toward her.



App. 010

## *Kathryn Requests a Meeting With Defendant Nguyen*

7.27    Kathryn requested to meet with Defendant Nguyen about his conduct toward her. Kathryn also wanted the Assistant Coach, who was Ms. Kellen Tensen, to attend the meeting as a witness. After Kathryn met with Defendant Nguyen, he sent her a text message and forwarded the same text message to Mr. Capua, which stated, "[T]hanks for stopping by this morning. I believe in you! I will do a better job of being more positive with u & encouraging you to be the best that you can be. I know u will do great things here @ Hartford."

7.28    But it only took two days for Defendant Nguyen to retaliate against Kathryn for requesting the meeting. In front of the entire team, Defendant Nguyen questioned Kathryn asking her if she was capable of playing at this competitive level.

7.29    Shortly into the school year, the volleyball players were required to see a Defendant Hartford psychologist, Dr. Dawn Neese, for 45 minutes every week to address bullying on the team by select players and an assistant coach. While the purpose of the visits with Dr. Neese was to discuss any behavior among the coaches and players which were inappropriate and any other matters of concern, during the meetings the players invariably discussed that Defendant Nguyen treated Kathryn inappropriately, unfairly, and in a hostile manner—providing numerous examples.

7.30    In late September 2018, Kathryn attended a private meeting with Dr. Neese to address all of her concerns regarding Defendant Nguyen's inappropriate, retaliatory, and hostile conduct toward her. Kathryn communicated to Dr. Neese that Defendant Nguyen continually belittles her in front of her teammates and treats her in a manner of hatred and anger. Dr. Neese stated to Kathryn that if she was her daughter, she would transfer her to another university very soon. Later this same day, Defendant Nguyen once again called-out Kathryn and humiliated her in the presence of the entire team.

7.31    As the season unfolded, Kathryn was confused by Defendant Nguyen's actions in recruiting her to Defendant Hartford (and his previous comments about Kathryn being a great player with a good moral compass) since he had consistently began to belittle and berate her once she arrived on campus.

7.32    Kathryn's father reached out to Defendant Nguyen to address the months of continuous and systematic humiliation and disparate treatment. Defendant Nguyen admitted during this telephone call that he treated Kathryn unfairly, and he would try to do better. Defendant Nguyen also communicated to Mr. Capua that he did not want anyone to think that she was his favorite player because he recruited her.

7.33    Despite assurances from Defendant Nguyen that he did not regret recruiting Kathryn, he continued to humiliate and bully her during practice. Defendant Nguyen's comments got so bad that her team members expressed how they were impressed that Kathryn did not cry during this exhibition of vile conduct by Defendant Nguyen. Players often told Kathryn during the season that they could not believe she did not just breakdown and cry due to harsh statements that Defendant Nguyen continuously made to her. At sessions with Dr. Neese, players discussed how bad that they felt for Kathryn, and how Defendant Nguyen yelled at Kathryn the entire season for making mistakes, yet other players made the exact same mistakes and were not admonished at all by him.

7.34    When Kathryn attended a final evaluation meeting with Defendant Nguyen and Assistant Coach Tensen, Defendant Nguyen's overall evaluation of Kathryn's performance was a "3" which is equivalent to a "D." During this evaluation meeting, which lasted approximately one hour, Defendant Nguyen did not focus on Kathryn's volleyball performance but, instead, addressed his personal comments about Kathryn's parents.

PLAINTIFF KATHRYN CAPUA'S ORIGINAL PETITION - Page 11 of 21



App. 012

### *Defendant Nguyen Commits Sexual Harassment Toward Kathryn*

7.35     While Defendant Nguyen was berating and humiliating Kathryn on the court, he showed a different side to Kathryn off of the court. In addition to reassuring her about how he wanted her to play for him, he commented on her physical appearance and how she looked good with her muscular physique. He would comment that he enjoyed watching female athletes that looked like Kathryn, often comparing Kathryn's body with the other players on Defendant Hartford's team. Defendant Nguyen also asked Kathryn if he looked good to her. Kathryn did not answer.

7.36     By the end of the semester, Defendant Nguyen's behavior had taken a toll on Kathryn physically as well as emotionally. Sophie Knittle, a trainer at Defendant Hartford, even asked Kathryn if she had an eating disorder because she had lost so much weight, and Jarrett Kratzer, the strength and conditioning coach, noticed that Kathryn was lifting weight below her normal amount. Kathryn had been suffering from the emotional, verbal, and sexual abuse for months from Defendant Nguyen and Defendant Hartford, which was made known to other coaches and the school psychologist. Yet no representative of Defendant Hartford checked on Kathryn until she started to show signs of physical duress.

### *Kathryn Returned Home Completing the Fall, 2018, Semester at Defendant Hartford*

7.37     After Kathryn returned home after finishing the fall semester, Kathryn had lost approximately 24 pounds while she played volleyball at Defendant Hartford. After Defendant Nguyen made numerous comments during the fall semester about how good Kathryn looked to him, she no longer wanted her body to have a muscular framework. Eating and studying were the only two things in life at Defendant Hartford, which Kathryn believed that she had any sort of control over.



7.38    After Kathryn arrived home, Kathryn's parents were very worried about her emotional and physical well-being. Kathryn went to see Tiffany Smith, MS, LMFT-S, LPC-S, who is a therapist that provides professional assistance to clients that emotionally suffer from being the victim of abusive, hostile, and sexual harassment conduct. After Kathryn's therapy sessions with Ms. Smith, she concluded that Kathryn's Binge Eating Disorder was a direct consequence of continuous inappropriate conduct by Defendant Nguyen and Defendant Hartford.

7.39    Ms. Smith also recommended that Kathryn consult with Ms. Keri Stoner-Davis, MS, RDN, who specializes with providing nutritional instruction and good-eating habits to her clients. Ms. Stoner-Davis concluded that Kathryn developed a Binge Eating Disorder. Ms. Stoner-Davis' opinion is that Kathryn's Binge Eating Disorder is a direct result of Defendant Nguyen's harassment, intimidation, and sexual comments toward her.

7.40    Kathryn could not return to Defendant Hartford for the Spring 2019 semester. She was emotionally unstable and had to now battle with an eating disorder. Kathryn wanted to continue playing volleyball at Defendant Hartford and take more classes, but as long as Defendant Nguyen was still the head coach, she could not continue to be a player on the team.

7.41    Kathryn did travel to Defendant Hartford to discuss all of the wrongful conduct that was committed by Defendant Nguyen. At that meeting, which included Defendant Hartford's outside counsel and Kathryn's parents, Kathryn discussed the events that she endured as a consequence of Defendant Nguyen's inappropriate conduct. Ms. Padilla, who is an attorney for Defendant Hartford, stated at the conclusion of the meeting that she would discuss with Defendant Hartford if an investigation should be initiated due to Kathryn's allegations.

7.42    It appears that some sort of investigation occurred because Defendant Hartford's outside counsel stated that her firm "conducted a thorough review of this matter" and that her



findings would be reported to Defendant Hartford. But Kathryn did not hear from Defendant Hartford. Finally, months later, Defendant Hartford sent a letter simply stating that it ". . . wishes . . . Kathryn the best of luck in the future." Defendant Hartford's response is the proverbial "slap in the face" based upon all the horrific verbal conduct that Kathryn was exposed to by Defendant Nguyen.

## VIII.
## FIRST CAUSE OF ACTION
## COMMON LAW FRAUD/FRAUD IN THE INDUCEMENT

8.01    Kathryn incorporates by reference Sections 1. through VII. of this Petition as if fully set forth at length.

8.02    Defendants Hartford and Nguyen made representations to Kathryn.

8.03    Defendants Hartford and Nguyen's representations were material.

8.04    Defendants Hartford and Nguyen's representations were false.

8.05    When Defendants Hartford and Nguyen made the representations, Defendants Hartford and Nguyen:

    a.    knew the representations were false, or

    b.    made the representations recklessly, as a positive assertion, and without knowledge of their truth.

8.06    Defendants Hartford and Nguyen made the representations with the intent that Kathryn act on them and with the intent to induce Kathryn to enter into a contract to attend and play volleyball for Hartford wherein Defendant Hartford agreed to provide Kathryn with tuition, fees, on-campus room and board, and required books for the 2018-2019 academic year.

8.07    Kathryn relied on their representations and was induced to enter into a contract with Defendant Hartford to attend the University and play volleyball under the terms of her athletic scholarship.

8.08   As a result of the Defendants' false representations, Kathryn has suffered injuries.

## IX.
## SECOND CAUSE OF ACTION
## NEGLIGENCE

9.01   Kathryn incorporates by reference Sections I. through VIII. of this Petition as if fully set forth at length.

9.02   As further alleged herein, Defendants Hartford and Nguyen owed Kathryn various legal duties that Defendants Hartford and Nguyen breached thereby proximately causing Kathryn damages and serious bodily injuries.

9.03   By way of example and not limitation, Defendants Hartford and Nguyen knowingly and negligently treated Kathryn unfairly compared to the rest of the volleyball players on the team, bullied Kathryn, made demeaning and degrading statements to Kathryn, and made inappropriate comments to Kathryn which caused Kathryn to have an eating disorder.

9.04   Defendants Hartford and Nguyen owed a legal duty to Kathryn.  Defendants Hartford and Nguyen breached the duty to Kathryn by committing all the acts alleged herein. Defendants Hartford and Nguyen's breach of duty proximately caused multiple injuries to Kathryn.

9.05   Kathryn's damages complained of herein arose out of Defendants Hartford and Nguyen's breaches of their legal duties owed to her—without which, Kathryn never would have been injured.

## X.
## THIRD CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

10.01  Kathryn incorporates by reference Sections I. through IX. of this Petition as if fully set forth at length.



10.02  Defendants Hartford and Nguyen made representations to Kathryn in the course of Defendants Hartford and Nguyen's business.

10.03  Defendants Hartford and Nguyen supplied false information for the guidance of others in their business.

10.04  Defendants Hartford and Nguyen did not exercise reasonable care or competence in obtaining or communicating the information.

10.05  Kathryn justifiably relied on their representations.

10.06  Defendants Hartford and Nguyen's negligent representations proximately caused Kathryn multiple injuries.

## XI.
## FOURTH CAUSE OF ACTION
## GROSS NEGLIGENCE

11.01  Kathryn incorporates by reference Sections I. through X. of this Petition as if fully set forth at length.

11.02  Defendants Hartford and Nguyen's conduct and breaches set forth in this Petition alleged above constitute gross negligence in that:

> a.  when viewed objectively from the standpoint of Defendants Hartford and Nguyen at the time of their occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Kathryn; and

> b.  Defendants Hartford and Nguyen had actual, subjective awareness of the risk involved but, nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of Kathryn.



## XII.
### FIFTH CAUSE OF ACTION
### BREACH OF CONTRACT

12.01   Kathryn incorporates by reference Sections I. through XI. of this Petition as if fully set forth at length.

12.02   On or about July 2, 2018, Kathryn and Defendant Hartford entered into an express contract whereby Defendant Hartford agreed to provide Kathryn with tuition, fees, on-campus room and board, and required books for the 2018-2019 academic year ("Athletics Award"). Kathryn agreed to attend classes and play volleyball at Defendant Hartford because she was a recipient of the Athletics Award.

12.03   Kathryn relied upon the representations of Defendants Hartford and Nguyen to her detriment.   When Kathryn accepted the Athletics Award, she had no knowledge that she would be bullied, intimidated, and sexually harassed by Defendants Hartford and Nguyen. Kathryn performed all the conditions required by her because she: (1) attended classes, (2) attended volleyball practices and games, and (3) had a cumulative 4.0 GPA.   Kathryn would not have attended Defendant Hartford if she knew that it and Defendant Nguyen would treat her inappropriately.   Defendants Hartford and Nguyen failed to perform which caused her damages from the 2018-2019 academic year through the 2021-2022 academic year.

### XIII.
### RESPONDEAT SUPERIOR

13.01   Kathryn incorporates by reference Sections I. through XII. of this Petition as if fully set forth at length.

13.02   Kathryn would show that Defendant Hartford is subject to vicarious liability for the conduct of its employee, who is Defendant Nguyen, due to Defendant Nguyen's negligence



App. 018

while acting within the scope and authority of his employment with Defendant Hartford. Specifically, Defendant Hartford is subject to liability as follows:

>      a.     Defendant Nguyen is guilty of negligence and committed the tort, which is the subject of this action as described herein. As a direct and proximate result of Defendant Nguyen's negligence, Kathryn suffered damages; and
>
>      b.     At the time of the commission of the tort, Defendant Nguyen was working within the scope and authority of his employment with and for the benefit of Defendant Hartford.

13.03  Kathryn would show that the conduct of Defendant Nguyen, who is Defendant Hartford's employee, constitutes negligence as set forth above, and, as a direct and proximate cause of the negligent actions of Defendant Nguyen, Kathryn suffered damages. Defendant Hartford is vicariously liable for these damages in an amount within the jurisdictional limits of the Court.

## XIV.
## EXEMPLARY DAMAGES

14.01  Kathryn incorporates by reference Sections I. through XIII. of this Petition as if fully set forth at length.

14.02  Defendants Hartford and Nguyen's tortious conduct was not only negligent, but also was malicious and/or grossly negligent.

14.03  Kathryn would further show that the acts and omissions of Defendants Hartford and Nguyen complained of herein were committed knowingly, willfully, intentionally, with actual awareness, with conscious indifference to the rights, safety, or welfare of others, and with a specific and predetermined intention. In order to punish said Defendants Hartford and Nguyen for such actions and to deter such actions and omissions in the future, Kathryn also seeks

recovery from Defendants Hartford and Nguyen for exemplary damages as provided by Section 41,003 of the Texas Civil Practice and Remedies Code Ann.

14.04   Defendants Hartford and Nguyen breached the legal duties they owed Kathryn such that they could take undue advantage of Kathryn and/or otherwise maliciously treat Kathryn. The acts or omissions of Defendants Hartford and Nguyen, when viewed objectively from their standpoint, involved an extreme degree of risk when considering the probability and magnitude of the potential harm to Kathryn.

14.05   Defendants Hartford and Nguyen's conduct was performed and/or designed with a specific intent to cause substantial injury or harm to Kathryn. As alleged herein, Defendants Hartford and Nguyen's conduct is an example of why punitive damages exist, and Kathryn alleges that Defendants Hartford and Nguyen's conduct rises to the level warranting the imposition of exemplary damages against Defendants Hartford and Nguyen at trial.

## XV.
## ATTORNEY'S FEES

15.01   Kathryn incorporates by reference Sections I. through XIV. of this Petition as if fully set forth at length.

15.02   Request is made for all costs and reasonable and necessary attorneys' fees incurred by or on behalf of Kathryn herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code Ann.

## XVI.
## DAMAGES

16.01   Kathryn incorporates by reference Sections I. through XV. of this Petition as if fully set forth at length.

16.02 Kathryn has incurred significant damages due to Defendants Hartford and Nguyen's tortious and grossly negligent conduct. Kathryn seeks all losses sustained as a natural, probable, foreseeable, and/or proximate result of Defendants Hartford and Nguyen's wrongful conduct, including but not limited to:

- a. General damages;
- b. Actual damages;
- c. Physical pain and suffering in the past and future;
- d. Mental anguish incurred in the past and future;
- e. Medical expenses incurred in the past and future;
- f. Out-of-pocket costs;
- g. Loss of enjoyment of life in the past and future;
- h. All reasonable and necessary attorneys' fees;
- i. Exemplary damages;
- j. Costs of court;
- k. Pre-judgment interest;
- l. Post-judgment interest; and
- m. All other relief, in law and in equity, to which Kathryn may be justly entitled.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Kathryn Capua requests that Defendants The University of Hartford and Vinh Nguyen be cited to appear and answer herein, and that upon final trial of this action, Kathryn Capua have and recover a judgment against Defendants



Hartford and Nguyen for the damages alleged herein, as well as all other relief, in law and in equity, to which Kathryn Capua may prove herself to be justly entitled.

Respectfully submitted,

*/s/ Pete Marketos*

**PETE MARKETOS**
State Bar Card No. 24013101
E-mail: pete.marketos@rm-firm.com
**LESLIE R. CHAGGARIS**
State Bar Card No. 24056742
E-mail: leslie.chaggaris@rm-firm.com
**REESE MARKETOS LLP**
750 N. Saint Paul Street, Ste. 600
Dallas, Texas 75201-3201
Telephone: (214) 382-9810
Facsimile: (214) 501-0731

**ATTORNEYS FOR PLAINTIFF**
**KATHRYN CAPUA**

CERTIFIED A TRUE AND CORRECT COPY
OF THE RECORD ON FILE IN MY OFFICE

DAVID-TRANTHAM
DENTON COUNTY DISTRICT CLERK

By: _____ Deputy Clerk